*Lavenna GEORGE*
Appellant
*vs.*
*Mary TSOSIE and The Navajo Nation*
Appellees

In the Supreme Court of the Navajo Nation

No. SC-CV-30-98

March 15, 2001

Scott E. Borg, Esq., Albuquerque, New Mexico, for Appellant.

Luke Macik, Esq., Gallup, New Mexico, for Appellees.

Before YAZZIE, Chief Justice, and AUSTIN and L. JOHNSON, Associate Justices.

Opinion delivered Austin, Associate Justice.

The issue on appeal is whether an injured worker who initially filed her claim with the Navajo Nation Workers' Compensation Program, and later withdrew from the administrative process to sue in Navajo Nation district court, should be required to pursue her remedy to completion in the workers' compensation forum. We hold in the affirmative.

I

On January 11, 1994, the Appellant, Lavenna George ( "George"), a Navajo Nation government employee, was struck and injured by a Navajo Nation vehicle driven by Mary Tsosie, also a Navajo Nation government employee. George was crossing the street between the Ganado Senior Citizen Center, her work site, and the Ganado Chapter House to make a telephone call to her supervisor to relay a message that a co-worker: would be late for work. The center's employees used the chapter house's telephone for sending and receiving office communications because their telephones were not connected. The co-worker had earlier asked George to call in the message to their mutual supervisor. The supervisors of the senior citizen centers encouraged the employees to assist and cover for one another because of the vast distances between the sub-offices.

George's supervisor filed a workers' compensation claim for her on January 14, 1994. A claims analyst for the Navajo Nation workers' Compensation Program ("Program") denied George's claim on February 4, 1994, ruling that her injury did not arise out of and in the course of her employment because she was on a personal errand when she was injured. On February 7, 1994, George sent a letter to the Program contesting the denial and requesting a hearing before the Employee Benefits Review Board ("Board"). George also explained in her letter that in addition to the telephone call, she was going to the chapter house to check for the center's messages, which was part of her job. The latter fact was not

included in George's original claim that was reviewed by the claims analyst. The Board set George's hearing for April 25, 1994.

The Program's attorney reviewed George's file and concluded that the facts supported George's claim for workers' compensation benefits. She sent a memorandum to the Program on April 19, 1994, recommending reconsideration of the denial and approval of George's claim for benefits.

On April 21, 1994, George sent a letter to Laverne Lee, Coordinator of the Workers' Compensation Program, stating that she wanted to "drop [her] appeal" to the Board because she was not prepared for the hearing. The record does not show when the claims analyst on George's case received this letter. The next day, on April 22, 1994, the Program notified George by telephone that her claim had been reevaluated and approved for benefits. On April 25, 1994, the day of the scheduled hearing, the Board received a letter from the Program's attorney advising that the Program had granted George's claim for benefits. The Board then dismissed George's appeal, but did not give a reason for the dismissal.

On December 12, 1995, George brought this negligence action in the Window Rock District Court against the Appellees, Mary Tsosie and the Navajo Nation. The Appellees moved for summary judgment arguing that the workers' compensation program had exclusive jurisdiction over George's claim, and by approving her claim for benefits, George did not have a case. In the alternative, the Appellees' argued that by withdrawing her request for a hearing before the Board, George had not exhausted her administrative remedies. George, this time, argued that she was on a personal errand at the time of the accident, therefore her claim was outside the Program's jurisdiction, and the Program should be held to its initial rejection of her claim. The district court granted summary judgment on the exhaustion issue and ordered George to exhaust her administrative remedies before the workers' compensation forum. The district court retained jurisdiction over the action pending a final decision from the administrative forum. George took an appeal from the summary judgment to this Court.

## II

George relies on *Eldridge v. Circle K Corp.*, 123 N.M. 145, 934 P.2d 1074 (N.M. App. 1997), and *Humana of Florida, Inc. v. McKaughan*, 652 So.2d 852 (Fla. App., 2d Dist. 1995), to support her argument that the district court should have decided the issue of whether she was acting within the course and scope of her employment at the time of the accident. George claims the district court erred by not deciding the issue and sending her back to the workers' compensation forum to exhaust her remedies.

We find significant differences between George's case and the *Eldridge* and *Humana* cases. In *Eldridge*, the claimant never invoked the jurisdiction of the workers' compensation program, and in fact insisted that the claim did not fall within the program's jurisdiction because it involved an intentional tort.

The claimant's decedent had been shot and killed by a customer. The New Mexico court favored the trial court over the workers' compensation program and stressed that while the program was well-suited to make decisions on issues within its expertise, such as employment status, it had no expertise on intentional torts. 123 N.M. at 150, 934 P.2d at 1079.

In the *Humana* case (which was later certified to the Florida Supreme Court, *Florida Birth-Related Neurological Injury Compensation Ass'n. v. McKaughan*, 668 So.2d 974 (1996)), the plaintiffs initially sued in the trial court on their son's behalf alleging medical malpractice. The defendants raised the exclusivity of the administrative remedy as a defense. At the trial court's urging, the plaintiffs filed a petition for benefits under the plan with the administrative forum, which they later supplemented. Their supplemental petition requested that the case be returned to the court, citing the administrative forum's lack of jurisdiction. The supplementary petition was granted. The issue of which forum would have jurisdiction to decide the matter was certified to the Florida Supreme Court. That court ultimately ruled that plaintiffs who are certain that their claims do not fall within the exclusive jurisdiction of the compensation plan are not compelled to seek a jurisdictional ruling from the administrative agency before filing a civil suit. *Florida Birth-Related Neurological Injury Compensation Ass'n.*, 668 So.2d at 977.

There is no evidence of intentional wrongdoing in George's case and she initially filed her claim with the Program. She did not allege that she was injured by the willful misconduct of a co- employee, which might have given her the option of filing initially with the district court. *See* 15 N.N.C. § 1013 (1995). The *Eldridge* and *Humana* cases do not support George. Because George's claim is not an intentional tort, she properly invoked the jurisdiction of the Program. A claimant who initially invokes the jurisdiction of the Program should be required to exhaust all remedies before that forum.

Navajo Nation government employees are 'presumed to have elected to take workers' compensation" coverage when hired. 15 N.N.C. § 1003(A) (1995). Thus, when a Navajo Nation employee is injured accidentally during the course and scope of his or her employment, and files a workers' compensation claim, the jurisdiction of the Workers' Compensation Program becomes exclusive. 15 N.N.C. § 1013. Workers fall within this exclusive jurisdiction when their injuries "arise out of and [are] in the course and scope of employment." 15 N.N.C. § 1002(F) (1995). Section 1013 of the Workers' Compensation Act states:

> The right to receive compensation pursuant to the provisions of this chapter for injuries sustained by a covered member shall be the exclusive remedy against the Navajo Nation and employees thereof, except where the injury is caused by the fellow employee's willful misconduct ... in which event, the injured employee may, at his or her option, either claim compensation or maintain an action at law for damage against the fellow employee ... before the Navajo Nation Courts. *Id.*

Once the employee files a claim, the Program must determine the employee's eligibility for workers' compensation benefits. If the Program denies the claim, the employee can request a hearing before the Board on the issue of whether his or her claim can be compensated. 15 N.N.C. § 1010(G) (1) (1995). If the Board upholds the denial, the employee may then file an appeal with this Court. 15 N.N.C. § 1011(B) (1995).

George started the process by filing her claim for benefits with the Program. The Program denied her claim on February 4, 1994, basing its decision on the facts offered by George at the time. George then sent a letter to the Program requesting a hearing before the Board and offered the following additional information about why she was walking to the Ganado Chapter House:

> [I]t was part of my routine to check for messages at the Chapter [House] twice each day, this was because the Center which I worked at did not have a phone. I check for messages to keep the lines of communication open with my agency office which is part of my duty . . . .

George's Letter dated February 7, 1994. The part about checking for messages as part of her job duties was not considered by the claims analyst during the initial review that led to the February 4, 1994 denial. Upon advice of its counsel and in light of the additional information George offered, the Program reevaluated George's claim and decided that her claim can be compensated. George was notified of this new decision on April 22, 1994 and the Board was notified on April 25, 1994 (the date of the scheduled hearing). It appears that the Board may have granted George's request to withdraw her "appeal" because it was satisfied that George had received the relief she wanted. That should have ended the case.

However, George then obtained counsel and decided to pursue a negligence claim in the district court. She created "material issues of fact" to support her suit by alleging that she was on a personal errand at the time of the accident. Appellant's Complaint dated December 12, 1995, allegation No. 5. The record shows that up to the time the complaint was filed, there were no disputed issues of fact as to George's employment status at the time of the accident. In fact, over a year earlier, the Program had determined that she was eligible for workers' compensation benefits. Thus, there was no cause of action for George to sue on in the district court.

Accordingly, we hold that the Program's decision of April 22, 1994 to award workers' compensation benefits to George is the final and binding decision that precludes her from filing a lawsuit on the same claim in the district court. The district court shall void its summary judgment and dismiss the case before it. The Program shall carry out its decision to compensate George.

This case is remanded to the Window Rock District Court, and from there to the Navajo Nation Workers' Compensation Program, for proceedings consistent with this opinion.